Modified.

24 C.C.P.A.(Patents)
### In re QUARTZ.
### Patent Appeals No. 3797.

Court of Customs and Patent Appeals.
May 29, 1937.

George L. DeMott, of Washington, D. C. (T. T. Greenwood, of Boston, Mass., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

The appellant filed an application in the United States Patent Office for a patent on an improvement in carbon sheets and carbon binders. One claim, the only remaining one in the case, was rejected by both tribunals in the Patent Office, and is brought here on appeal. This claim is as follows:

"22. A carbon sheet comprising a paper sheet having a carbon deposit on its working face and a projecting uncoated margin on one long edge of the sheet contrasting in color with the remainder of the sheet and co-extensive with the top and bottom edges of the sheet, said uncoated margin having on its back face a continuous series of horizontal marks spaced apart by a distance equal to the single line spacing of a typewriter, the continuous series of single spaced line marks being co-extensive with the length of the carbon deposit and said marks being progressively numbered throughout the length of the margin, said marks and said numbers serving to denote the position of typed characters on all portions of the sheet and to cooperate with the horizontal scale of the platen."

The Examiner relied on the following prior art: Burnett, 1,419,217, June 13, 1922; Smith, 1,133,331, March 30, 1915; Scott, 1,931,168, October 17, 1933; Ohashi, 898,916, September 15, 1908.

The same references were also relied upon by the Board of Appeals.

The appellant's contribution to the art is a carbon sheet "with an uncoated strip along one edge and provided on the reverse side of the uncoated strip with marks spaced equal to the single line spacing of a typewriter, the marks being numbered * * * from 1 at the bottom to 63 at the top." The sheet is so arranged that the uncoated strip and numbers project beyond the paper

which is being written upon, and the carbon area is the same as that of the record sheets. The uncoated strip also has thereon printed spaces giving the trade-name of the carbon sheet at various places along the numbered strip.

It is claimed by the appellant that his carbon sheet, which may also be used in a pack, enables the operator to arrange and handle the carbon sheets without soiling the hands, and that the numbers and marks appearing upon the margin enable the user to see when he is approaching the bottom of his record and duplicate sheets. It is also alleged that by means of the marginal numbers and marks, in conjunction with the scale on the platen, it is possible to make duplicate ribbon copies of matter which has been typewritten, and is very useful in arranging printed matter on copies, according to some prearranged desired form. In addition, it is stated that by the single-space arrangement of the numbers on the uncoated margin, the carbons can be so shifted as to avoid the repeated use of the same space in the carbon sheet, to utilize each portion of the carbon surface, and to accomplish a great saving in the number of carbon sheets used.

Four patents are cited as references. Ohashi shows a backing sheet for typewriting. This sheet is made to project at one edge slightly beyond the right-hand edge of the sheet which receives the writing. A series of numerals is arranged on both sides so that they may read in reverse order, running from 1 to 58, inclusive. These are at the right-hand opposite faces of the sheet, so that the sheet may be reversed, if desired.

The patentee Smith shows a carbon sheet with an upper uncoated margin used for the purpose of avoiding loss of time in trimming off the carbon sheets, and making it "simple and easy to assemble the carbons in the machine, with their leading edges in alinement with one another."

The patent to Burnett shows a carbon sheet with the carbon-coated surface extending entirely across the sheet. On the right-hand margin of the noncarbon-coated surface, along a part of the margin, namely, at the midpoint and at a number of points near both the upper and lower margins, indicia by which the operator is warned of the approach to the end of the sheet are provided.

The patent to Scott shows a carbon sheet having uncoated margins on both sides, each provided with indicia consisting of cut-in portions, by use of which the operator can note the approach of the end of the work sheet.

Accompanying the application is an affidavit of the inventor. There also appears in the record the affidavit of George F. Malcolm. These affidavits show very definitely the commercial success of the appellant's carbon sheets. It appears from these showings that during the last year more than $50,000 worth of carbon paper bearing this invention was sold, that the product has become commercially successful to a very considerable degree, and that it sells on the market at much higher prices than other competing papers. It is admitted by the Patent Office tribunals and by the Solicitor for the Patent Office in his argument here, that the product herein involved is useful and is a commercial success, and that it is novel and produces new and useful results. However, it is contended that it lacks invention over the reference patents.

As it seems to the court, the application of the appellant discloses a new and novel combination which is inventive. It is true that the prior art discloses two of the marked characteristics of utility in the carbon paper of appellant, namely, marginal numerals and margins free from carbon. There is, however, in this paper of appellant, a combination of utility and new and useful results which seems to entitle it to the award of a patent. The patent to Ohashi was not a carbon sheet. The patent to Smith was so remote as to obtain but slight mention from the Board of Appeals. The patent to Burnett lacked two of the main essentials, namely, a continuous line of marginal numerals and a soil-proof margin, and the patent to Scott had no marginal numerals. Carbon papers have been used for many years, and it is apparent that the art appreciated some of the difficulties which this inventor was seeking to overcome. However, while workers in the art approached, to some extent, a solution of the problem, the problem was not solved until this appellant conceived the fortunate combination of elements which converted these failures into a success. It is somewhat difficult, sometimes, to say just where invention begins, but it frequently happens, as it seems to have happened here, that some one will conceive of a fortunate com-

bination which produces a great advance in the art, which, perchance, seems to be but a small deviation from the practice and prior knowledge of the art.

The utility of this carbon paper is plainly apparent on seeing it in operation. Economies are produced by the use of the entire carbon backing. It is possible to make exact ribbon copies by the combination of the marginal numbers and platen scale, which greatly facilitate the work of the typist. These were lacking in the prior art and constitute considerable advances.

We are of opinion that the appellant has made an invention, and that he should be given a patent therefor.

The decision of the Board of Appeals of the United States Patent Office is reversed.

Reversed.